**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | | |
|---|---|---|
| DESMOND DARNELL DANIELS, | : | |
| Plaintiff, | : | |
| v. | : | Case No. 1:23-cv-212-WLS-ALS |
| Officer THOMAS, | : | |
| Defendant. | : | |

## ORDER AND RECOMMENDATION

On December 14, 2023, Plaintiff, an inmate at Johnson State Prison, filed a *pro se* Complaint asserting claims under 42 U.S.C. § 1983. (Doc. 1). Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. 37). Also pending before the Court is Plaintiff's Motion to Compel Discovery. (Doc. 45). For the reasons explained below, the Court denies Plaintiff's Motion to Compel Discovery and recommends granting Defendant's Motion for Summary Judgment.

### I. Background

Plaintiff alleges that Defendant violated his constitutional rights by using excessive force when, during intake into the Dougherty County Jail in Albany, Georgia, Defendant Thomas grabbed Plaintiff and slammed him into the wall. (Doc. 1, p. 5). According to Plaintiff, he was injured during this incident and was not given immediate medical attention. *Id.*

The Court received Plaintiff's Complaint on December 14, 2023. (Doc. 1). After a preliminary review pursuant to 28 U.S.C. § 1915A and § 1915(e), Plaintiff was allowed to proceed with his excessive force claim against Defendant Thomas. (Doc. 8, p. 7).

Defendant Thomas filed his Motion for Summary Judgment on January 27, 2026. (Doc. 37). Plaintiff filed a response to Defendant's Motion on March 23, 2026. (Doc. 43). Along with his response, Plaintiff also filed "Discovery Materials- Plaintiff's Set of Interrogatories" (Doc. 44) and a Motion to Compel Discovery (Doc. 45). The motions are ripe for review. The Court first addresses Plaintiff's discovery motion, followed by a recommendation as to Defendant's Motion for Summary Judgment.

## II. PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Plaintiff filed a Motion to Compel discovery on March 23, 2026, in which he argues that Defendant did not produce certain documents pertaining to Officer Senn who Plaintiff alleges was a witness to the incident. (Doc. 45). Plaintiff, however, has put the cart before the horse.

When this Court completed the initial screening of Plaintiff's Complaint and ordered service on Defendant, it notified the parties regarding discovery in this matter. (Doc. 11). Specifically, the Court stated that "Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of Defendants from whom discovery is sought by Plaintiff." (Doc. 11, p. 9). It was further ordered that discovery shall be completed within 90 days of the date of filing an answer or dispositive motion by Defendants (whichever comes first. . . )" (*Id.* at p. 10).

Defendant filed his answer on September 30, 2025. Thus, Plaintiff had ninety (90) days from that date to participate in discovery. Discovery closed on Monday, December 29, 2025. Although Plaintiff filed interrogatories with the Court on September 23, 2025, this was improper for two reasons: (1) Plaintiff was notified that discovery is not to be filed with the Court—it must be served on defendant; and (2) the discovery materials were filed prior to Defendant's answer. The Court notified Plaintiff of this error the same day

his discovery materials were filed. Yet, Plaintiff never took steps to serve his discovery requests on Defendant and waited until March 23, 2026 to, once again, file discovery materials with the Court rather than mail them to Defendant as he was instructed. (Doc. 44). The Court acknowledges Plaintiff's *pro se* status, but the Court's Order regarding discovery and instructions thereto are clear. Further, Plaintiff did not move to extend discovery, nor did he move pursuant to Federal Rule of Civil Procedure 56(d) for additional discovery in response to Defendant's Motion for Summary Judgment. Accordingly, Plaintiff's Motion to Compel Discovery is **DENIED**.

## III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Thomas moves for summary judgment, arguing he is entitled to both Eleventh Amendment immunity and qualified immunity on Plaintiff's claims because (1) he acted within his discretionary authority, and (2) Plaintiff cannot demonstrate a constitutional violation or a violation of clearly established law. (Doc. 37-1).

### a. Legal Standard

Under Fed. R. Civ. P. 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may

consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing A*nderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the non-moving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by citing to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The movant can meet that burden by presenting evidence showing there is no dispute of material fact, or by demonstrating that the nonmoving party has failed to present evidence in support of an element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings and by [nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial," or that the movant is not entitled to a judgment as a matter of law.

*Id.* at 324 (internal quotation marks omitted). To avoid summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Rather, the nonmoving party must provide "enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citations omitted); *see also Bald Mountain Park*, 863 F.2d 1560, 1563 (11th Cir. 1989) ("Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment.").

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Matsushita*, 475 U.S. at 587–88; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

**b. Undisputed Material Facts**

The following facts are derived from Plaintiff's Complaint (Doc. 1), Defendant's Amended Answer to the Complaint (Doc. 36), Defendant's Motion for Summary Judgment (Doc. 37), Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. 43), Defendants' Reply (Doc. 47), and all exhibits attached to the foregoing documents.

It should be noted that the record here contains video evidence. The United States Supreme Court has recognized a "wrinkle" in cases where the record contains video evidence, holding that when facts are disputed, and video evidence is present, a court should "view[ ] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007). Following the Supreme Court's guidance and viewing the facts in the

light most favorable to Plaintiff, the evidence reveals the following:

On August 24, 2023, Plaintiff was returning to the Dougherty County Jail from Lee State Prison for purposes of trial. (Doc. 37-2, ¶ 1; Doc. 43, ¶ 1). After arriving at the Dougherty County Jail, Plaintiff was taken into the sallyport area where he was processed by Defendant Thomas. (Doc. 37-2, ¶¶ 2-3; Doc. 43, 2). Defendant Thomas asked Plaintiff to open his mouth to search for contraband. (Doc. 37-2, ¶ 3; Doc. 43 ¶ 3). Plaintiff informed Defendant Thomas that he "couldn't perform [the] action because" he had a broken jaw. (Doc. 43 ¶ 3; Video #1 at 00:44-0047). Defendant then asked Plaintiff to pull his bottom lip down and directed Plaintiff to run his finger around the inside of his mouth. (Doc. 43 ¶ 3; Video #1 at 00:47-00:54). Plaintiff appears to become irate and raises his voice in protest refusing to comply, yelling and cursing at Defendant Thomas, stating that he was "already pissed off." (Video #1 at 00:54-01:04). While Defendant Thomas appears to remain in the same position, Plaintiff moves closer to him, raises his left arm, and continues to curse at Defendant Thomas, causing an argument to ensue. (*Id.*; Doc. 37-2, ¶ 6; Doc. 43, ¶ 4). Defendant Thomas then raised his arm, and as he did so, Plaintiff pushed Defendant Thomas's arm down. (Video #1, 01:02). At this point, Defendant Thomas appears to grab Plaintiff's uniform with both hands directly below the collar. (*Id.* at 01:03). Defendant Thomas pushes Plaintiff backward, then rotates him and pushes him towards the wall on the opposite side of the sallyport. (*Id.* at 01:03-01:11). It is undisputed that Defendant Thomas did not strike, hit, or punch Plaintiff. (Doc. 37-3, ¶9; Doc. 43, p. 7).

As Defendant Thomas was pushing Plaintiff towards the opposite side of the sallyport, other officers entered the sallyport. (Doc. 43, ¶ 7; Video #1 at 01:09-01:11). One of the officers who entered the sallyport was Captain West who instructed Defendant Thomas

to "let [Plaintiff] go." (Doc. 37-2, ¶ 9; Doc. 43, ¶ 7; Video #1 at 01:11). Captain West further instructed Defendant Thomas to step out of the sallyport, which he did. (Doc. 43, ¶ 10; Video #1 at 01:26). Captain West spoke directly to Plaintiff as he explained that he could not open his mouth because his jaw was healing after being broken, and Captain West then completed the search of Plaintiff's mouth. (Video #1 at 01:30-02:44).

Both an incident report and use of force report were completed. (Doc. 37-2, ¶ 13; Doc. 37-3, ¶¶ 10-11). The incident was reviewed by Major Pamela Coley who concluded that after reviewing the video footage and reviewing the reports, Defendant Thomas's actions were necessary "to stop and control Daniels actions," concluding that Defendant Thomas was "justified in his actions." (Doc. 37-3, p. 7). Major Coley stated that the use of force by Defendant Thomas was justified because of Plaintiff's aggressive behavior, including Plaintiff "clos[ing] the distance between he and Officer Thomas while swinging his arms and yelling," and further that Plaintiff "makes contact with Office Thomas by grabbing his hand first." (*Id.*).

**c. Excessive Force**

Plaintiff alleges that Defendant used excessive force by slamming him against the sallyport wall during intake. (Doc. 1, p. 5). Defendant argues that he did not slam Plaintiff into the wall, thus contradicting Plaintiff's excessive force claim. Further, Defendant argues that he is entitled to both Eleventh Amendment and qualified immunity. (Doc. 37-1, pp. 3-4).

i. <u>Excessive Force Standard and Analysis</u>

A pretrial detainee's excessive force claim arises under the Fourteenth Amendment and allegations "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015).

"[O]bjective reasonableness turns on the 'facts and circumstances of each particular case[,]'" and the determination of reasonableness is made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Courts "must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)).

In determining whether the amount of force used against a pretrial detainee was objectively reasonable, the Court should consider at least the following non-exhaustive factors: "the facts and circumstances of [the] particular case[,]" including "the relationship between the need for use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.*

Here, an application of the *Kingsley* factors to the undisputed facts weigh in favor of Defendant. Plaintiff's response to Defendant's instruction to open his mouth included verbal and physical resistance. By Plaintiff's own admission, he began cursing at Defendant Thomas, and, as shown on the video footage, Plaintiff begins to move his arms in an animated posture. (Doc. 43, ¶4). Although these behaviors are not entirely threatening on their own, when Plaintiff pushes Defendant Thomas's raised arm, the situation is escalated from a verbal argument to physical contact. The need for force in this circumstance is apparent, as is the fact that Plaintiff was actively resisting

Defendant's instructions and Defendant reasonably perceived a threat. Thus, three of the *Kingsley* factors weigh in favor of Defendant Thomas.

The extent of Plaintiff's injuries remains unclear. Plaintiff alleges in his Complaint that his jaw was "re-broke, further broke," and that he is still in excruciating pain as a result of the incident. (Doc. 1, p. 5). Defendant disputes this, contending that Plaintiff was able to comply with Captain West's instructions following the incident to open his mouth, and he was later cleared by medical to go into a cell. (Doc. 37-1, p. 8). Even accepting Plaintiff's claims of injury as true, the video footage which depicts Plaintiff talking without incident to Captain West after his jaw was allegedly re-broken casts doubts on those claims. Thus, the extent of injury factor must weigh in Defendant's favor.

As to the effort made by Defendant to temper or limit the amount of force- this factor must weigh slightly in favor of Plaintiff. While Defendant did comply with Captain West's instructions to let Plaintiff go, the video evidence shows that Plaintiff was no longer physically resisting Defendant at the time Defendant shoved or pushed Plaintiff across the sallyport to the opposite wall. Despite this, Defendant did not release Plaintiff until he was instructed to do so by Captain West.

While the severity of the security issue was not overwhelming—Plaintiff was an individual prisoner confined in the sallyport with two jail officers, rather than, for example, participating in a large-scale prison riot—the threat reasonably perceived to Defendant was legitimate: as Defendant raised his arm up to ensure distance between himself and Plaintiff as Plaintiff was resisting his commands and becoming verbally agitated, Plaintiff pushed Defendant's arm and shoved it downwards. As a result, this factor is in favor of Defendant.

Finally, the Court also finds consideration of the legitimate interests that stem from

the need to manage the jail in which Plaintiff was detained requires it—under the facts of this case—to appropriately defer to the need to maintain security and safety by ensuring that no detainee arrives with contraband.

Thus, on balance, the majority of the *Kingsley* factors favor Defendant. Further, given the Court's noted deference to Dougherty County Jail's need to preserve order, discipline, and to maintain security, the Court's analysis under the *Kingsley* factors favor Defendant. As a result, Plaintiff has not shown a genuine issue of material fact as to whether Defendant violated his constitutional rights. Accordingly, Defendant is entitled to summary judgment.

## IV. Immunity Claims

While it is not entirely clear from Plaintiff's Complaint whether his claims against Defendant Thomas are in his official capacity, individual capacity, or both, Defendant Thomas is entitled to immunity in both circumstances.

### a. Eleventh Amendment Immunity

To the extent that Plaintiff brings his claims against the Defendant in his official capacity, the Eleventh Amendment bars Plaintiff's claims. A state is not considered a "person" subject to suit for money damages under § 1983, such that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71 (1989). Thus, a suit brought against defendant prison officials in their official capacities for money damages is in reality a suit against the state and as such is not cognizable under § 1983.

### b. Qualified Immunity

Qualified immunity acts as a shield for government officials from liability for acts committed during their discretionary duties, "unless their conduct violates a clearly

established statutory or constitutional right." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). "The purpose of qualified immunity is to allow officials to carry out discretionary duties without the chilling fear of personal liability or harrassive litigation[.]" *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009). "In order to receive qualified immunity, an official must first establish that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Id.* (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).

Once the defendant shows he was acting within his discretionary authority, the burden shifts to the plaintiff to establish that qualified immunity does not apply. *Lee*, 284 F.3d at 1194; *Courson v. McMillian*, 939 F.2d 1479, 1488-89 (11th Cir. 1991). It is undisputed in this case that Defendant was acting within the scope of his discretionary duties and pursuant to the performance of those duties in his interaction with Plaintiff. *See Glasscox v. Argo, City of*, 903 F.3d 1207, 1213 (11th Cir. 2018); *see also Johnson v. Fee*, 838 F. App'x 394, 398 (11th Cir. 2020) (quoting *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017)) (finding prison officers were acting within the scope of their discretionary authority considering the "general nature" of their actions). Thus, the burden shifts to Plaintiff to show Defendant is not entitled to qualified immunity. To meet his burden, Plaintiff must plead "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Wood v. Moss*, 572 U.S. 744, 757 (2014) (internal quotation marks and citation omitted); see also *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Plaintiff has not shown that Defendant violated his Fourteenth Amendment rights, and he has not met his burden to establish that Defendant is not entitled to the protection of qualified immunity. Indeed, Plaintiff's response fails to rebut or otherwise address the

issue of qualified immunity whatsoever. For the reasons discussed above, Defendant's actions did not amount to excessive force in violation of the Fourteenth Amendment. Because he was acting within the scope of his discretionary duties and there was no constitutional violation, Defendant is entitled to qualified immunity.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion to Compel Discovery is **DENIED**, and it is **RECOMMENDED** that Defendant's Motion for Summary Judgment be **GRANTED**.

Pursuant to 28 U.S.C § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within fourteen (14) days after being served with a copy hereof. Any objection should be no longer than TWENTY (20) PAGES in length. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO ORDERED AND RECOMMENDED**, this 11th day of September, 2026.

s/ **ALFREDA L. SHEPPARD**
UNITED STATES MAGISTRATE JUDGE